UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
KIM SEBASTIANO,

                Plaintiff,

                         Civil Case No:

-against-

                         Plaintiff Demands a

KALEIDOSCOPE CONSULTING GROUP LLC,       Trial by Jury
OUTERBRIDGE MEDICAL P.C., and
JONATHAN MIRSKY,                            **COMPLAINT**

                Defendants.
---------------------------------------------------------X

Plaintiff, KIM SEBASTIANO, through her counsel, DEREK SMITH LAW GROUP PLLC, hereby complains of Defendants, upon information and belief, as follows:

## NATURE OF CASE

1. Plaintiff KIM SEBASTIANO complains pursuant to the Americans with Disabilities Act of 1990 ("ADA") as amended, the Administrative Code of the City of New York and the laws of the State of New York, based upon the supplemental jurisdiction of this Court pursuant to *Gibb*, 38 U.S. 715 (1966) and 28 U.S.C. § 1367 seeking declaratory and injunctive relief and damages to redress the injuries Plaintiff has suffered as a result of, *inter alia*, disability discrimination, and retaliation by her employers.

## JURISDICTION AND VENUE

2. Venue is proper in this District based upon the fact that the events or omissions which gave rise to the claims asserted herein occurred within the Eastern District in the County of New York.

3. This Court has supplemental jurisdiction over the state causes of action asserted in this action.

4. On or about August 26, 2015, Plaintiff submitted a Charge with the EEOC.

5. On or about October 19, 2015, the EEOC mailed a Right to Sue Letter to Plaintiff.

6. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

## PARTIES

7. At all times material, Plaintiff KIM SEBASTIANO (hereinafter referred to as "Plaintiff" and/or "SEBASTIANO") is an individual woman who is a resident of the State of New York, County of Richmond.

8. At all times material, Defendant KALEIDOSCOPE CONSULTING GROUP LLC (hereinafter referred to as "Defendant" and/or "KALEIDOSCOPE") is a domestic limited liability company duly existing by virtue of the laws of the State of New York that does business in the State of New York.

9. At all times material, Defendant OUTERBRIDGE MEDICAL P.C. (hereinafter referred to as "Defendant" and/or "OB MEDICAL") is a domestic professional corporation duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business located at 4982 Hylan Boulevard, Staten Island, New York 10312.

10. At all times material Plaintiff was jointly employed by Defendant KALEIDOSCOPE and Defendant OB MEDICAL (hereinafter collectively referred to as "Defendants").

11. Defendant JONATHAN MIRSKY at all times material, was and is the owner of Defendant KALEIDOSCOPE.

12. As per the Court of Appeals case of *Patrowich v. Chemical Bank*, 63 NY2d 541 [1984]) those employees with "an ownership interest in the company" or "the power to do more than carry out personnel decisions made by others" may be held personally liable for unlawful discrimination (see *Monsanto v. Electronic Data Systems Corporation*, 141 AD2d 514, 515 [2d Dept 1988]; *Bridges v. Eastman Kodak Company*, 822 F Supp at 1029; cf *Sier v. Jacobs Persinger & Parker*, 236 AD2d 309 [1st Dept 1997]).

13. Each of the individual Defendants have "an ownership interest in the company" and/or "the power to do more than carry out personnel decisions made by others."

## MATERIAL FACTS

14. At all times material, Defendants' employee JOSEPH SAPONARO (hereinafter also referred to as "SAPONARO") was and is an individual residing in the State of New York.

15. At all times material Defendants' employee SAPONARO was the Practice Manager at Defendant OB MEDICAL.

16. Defendants' employee ANGELA HEROLD (hereinafter also referred to as "HEROLD") was and is an individual residing in the State of New York.

17. At all times material Defendants' employee HEROLD was the Office Manager at Defendant OB MEDICAL.

18. At all times material, Defendants' employee SAPONARO had supervisory authority over Plaintiff with regard to her employment.

19. In or around April 2013, Plaintiff was employed by Defendant OB MEDICAL, as an Administrative Assistant. Plaintiff's duties included answering phones, billing, and scheduling.

20. In or around February 2014, Defendant OB MEDICAL's medical practice began to be co-managed by Defendant KALEIDOSCOPE, and the practice was moved to 4864 Arthur Kill Road, Staten Island, New York, New York 10309.

21. At this time, Plaintiff became a full-time employee and her salary was reduced from $18 per hour to $16 per hour.

22. Plaintiff often worked well more than 40 hours in a one week period and was never paid overtime pay.

23. On or about February 23, 2015, Plaintiff arrived at work to find a file cabinet that had a pile of garbage on top of it. Atop the file cabinet was a large piece of cardboard with a note from SAPONARO, which stated "I had every intention of moving everything myself to the kitchen until I saw how filthy the office and room are kept. I treat here like home. I wouldn't eat in your home if this is what it looked like. Happy setting everything up."

24. This made Plaintiff, as well as several other employees, very upset.

25. After bringing the note to the attention of HEROLD, Plaintiff was told by another co-worker that had spoken with SAPONARO, that SAPONARO instructed the employees, including Plaintiff, to start cleaning the mess.

26. SAPONARO stated that if the employees did not clean up, "I will have to deduct money from all your salaries to pay a cleaning company."

27. Immediately after hearing this, Plaintiff became extremely upset and began to cry.

28. SAPONARO had already decreased her salary when Defendant KALEIDOSCOPE took over the practice.

29. Plaintiff approached HEROLD and expressed how upset she was after hearing SAPONARO's threat to cut Plaintiff's salary.

30. Plaintiff was still crying and began to have difficulty breathing.

31. HEROLD told Plaintiff that if she could not handle it then maybe she should quit.

32. Plaintiff was still having difficulty breathing and began to feel a sharp pain in her left breast. Plaintiff called her husband to pick her up and take her home.

33. Upon arriving home, Plaintiff still had terrible pain in her left breast and trouble breathing. Plaintiff called an ambulance and was taken to the hospital.

34. Plaintiff was initially diagnosed with a "mild heart attack," which was later determined to be a "Stress Induced Cardiomyopathy" also known as "Takotsubo Cardiomyopathy," at Staten Island Hospital.

35. Plaintiff did not have any prior heart issues.

36. Immediately after the heart attack, Plaintiff was unable to work for a period of almost one month and needs to take medication that lowers her blood pressure, thus alleviating the stress on her heart.

37. As a direct result, Plaintiff suffered, and continues to suffer, from a physical impairment that substantially limits the major life activities of working and

sleeping, and substantially limits the operation of a bodily function such as Plaintiff's circulatory system.

38. SAPONARO texted Plaintiff on February 24 and 25, 2015 to talk and "clear things up." Plaintiff agreed to meet with SAPONARO.

39. Plaintiff was released from the Coronary Intensive Care Unit on February 26, 2015.

40. After being released from the hospital, Plaintiff made an appointment to see her doctor on March 2, 2015. Plaintiff's doctor, Dr. Robert LaPenna, is the Chief Executive Officer of Defendant OB MEDICAL.

41. Plaintiff texted SAPONARO notifying him that Plaintiff would be in the office on March 2, 2015, if he would like to speak with her. SAPONARO did not meet with Plaintiff that day.

42. On or about March 10, 2015, Plaintiff was examined by Dr. Srinivas Duvvuri. Dr. Duvvuri determined that Plaintiff was able to return to work on March 16, 2015.

43. On or about March 11, 2015, Plaintiff, eager to return to work, texted SAPONARO that she could return to work on March 16, 2015.

44. SAPONARO responded that HEROLD, he, and Plaintiff would "need to sit down and talk first."

45. Plaintiff contacted HEROLD every day from March 12-17, 2015 and was repeatedly told that SAPONARO was unavailable.

46. On or about March 18, 2015, Plaintiff contacted both SAPONARO and HEROLD regarding her desire to return to work as soon as possible.

47. HEROLD called Plaintiff and said she had to ask Plaintiff a few questions before Plaintiff would be able to come back to work.

48. HEROLD instructed Plaintiff "You can come and work four hours per day for the next week - we can then discuss your schedule after that."

49. On or about March 19, 2015, Plaintiff returned to work. Plaintiff's duties included front desk and data entry work. Plaintiff worked for four (4) hours.

50. Plaintiff worked March 21, 2015 through March 31, 2015. Initially, Plaintiff was only supposed to work 4 hours per day due to her condition, but ended up working full time hours during this period.

51. On or about March 31, 2015, Plaintiff was finally able to sit down and speak with SAPONARO. Plaintiff first provided SAPONARO with the Notice and Proof of Claim for Disability Benefits, "Form DB-450" for the time that she was out.

52. Plaintiff then gave SAPONARO the "Notice of Employee Rights," under the New York City's Earned Sick Time Act, and informed SAPONARO that she was entitled to 40 hours of paid sick leave.

53. Upon hearing this, SAPONARO became furious and grabbed the form from Plaintiff's hand. SAPONARO shouted "You'll have this tomorrow" and stormed out of the office.

54. Plaintiff returned to her desk and began working when HEROLD came to Plaintiff and instructed her, "You have to leave now." Plaintiff responded that she was finishing some work for SAPONARO and was unaware of why she was being asked to leave. HEROLD replied, "No, you have to leave now!" Plaintiff said, "I can go downstairs and ask the doctor how much longer I can stay."

55. Plaintiff attempted to speak with JONATHAN MIRSKY, owner of Defendant KALEIDOSCOPE; however, HEROLD did not allow Plaintiff to do so and escorted her out of the building.

56. Defendants discriminated against Plaintiff on the basis of her disability and retaliated against Plaintiff because she complained about Defendants' mistreatment of her because of her disability and because she was seeking reasonable accommodation.

57. On or about April 1, 2015, Plaintiff scheduled a meeting with SAPONARO and HEROLD. Upon arriving at work SAPONARO and HEROLD escorted Plaintiff to a room upstairs where SAPONARO said "Let's try to keep this calm."

58. SAPONARO proceeded to take the "Notice of Employee Rights" form from his bag, tell Plaintiff that it was "computer generated" and then crumble it into a ball and toss it over his shoulder.

59. SAPONARO asked Plaintiff, "Why are you even coming back to work here?" Plaintiff responded, "Why wouldn't I? – This is my job." SAPONARO questioned why Plaintiff needed the job. Plaintiff responded, "I can get a job anywhere, but this is where I work."

60. SAPONARO asked Plaintiff what she going to say when she attempted to speak with JONATHAN MIRSKY. Plaintiff responded that she was not sure what she would have said. SAPONARO responded, "It's a good thing that you didn't say anything because the doctor [Dr. LaPenna], Doreen [Dr. LaPenna's wife], their children AND YOUR CHILDREN would be very sorry."

61. Defendants threatened to retaliate against Plaintiff.

62. SAPONARO told Plaintiff "You are a good worker. You are loyal to the doctor [Dr. LaPenna]. You are loyal to the company - but you aren't loyal to me. I believe you have something against me." Plaintiff responded, "I have nothing against you. But my last paycheck was nothing – zero. I got zero for my time out."

63. SAPONARO then said "You're fucking fired. Get the fuck out of my office!" and stormed out of the room.

64. Plaintiff was escorted out of the building by HEROLD who collected Plaintiff's keys.

65. Defendants discriminated against Plaintiff on the basis of her disability, and retaliated against Plaintiff for attempting to exercise her protected rights regarding her disability and because Plaintiff was asking for reasonable accommodation in connection with her disability.

66. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

67. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

68. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

69. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all Defendants jointly and severally.

70. The above are just some of the examples of unlawful and discriminatory conduct to which Defendants subjected Plaintiff.

**AS A FIRST CAUSE OF ACTION
FOR DISCRIMINATION UNDER
THE AMERICANS WITH DISABILITIES ACT
(not against individual Defendants)**

71. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

72. Plaintiff claims Defendants violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

73. SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

74. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SECOND CAUSE OF ACTION
FOR RETALIATION UNDER
THE AMERICANS WITH DISABILITIES ACT
(not against individual Defendants)**

75. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

76. SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

77. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A THIRD CAUSE OF ACTION
FOR DISCRIMINATION UNDER
NEW YORK STATE LAW**

78. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

79. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from

employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

80. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her disability, harassment and causing a hostile work environment.

81. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## NEW YORK STATE LAW

82. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

83. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

84. Defendant engaged in an unlawful discriminatory practice by wrongfully retaliating against Plaintiff.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## NEW YORK STATE LAW

85. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of the complaint.

86. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

87. Defendant engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

<b><u>AS A SIXTH CAUSE OF ACTION<br>FOR DISCRIMINATION UNDER<br>THE NEW YORK CITY ADMINISTRATIVE CODE</u></b>

88. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

89. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

90. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, by creating and maintaining discriminatory working conditions and a hostile work environment, and otherwise discriminating against the Plaintiff because of Plaintiff's disability.

91. Plaintiff hereby makes a claim against Defendant under all of the applicable paragraphs of New York City Administrative Code Title 8.

## AS A SEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE

92. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

93. The New York City Administrative Code Tide 8, §8-107(1)(e) provides that it shall be unlawful discriminatory practice: "For an employer . . , to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

94. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(1) (e) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## AS AN EIGHTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE

95. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

96. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel;

or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

97. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## AS A NINTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

98. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

99. Section 8-107(19), entitled Interference with protected rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

100. Defendants violated the above section as set forth herein.

## AS A TENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

101. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

102. Section 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor provides "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section." b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

103. Defendants violated the above section as set forth herein.

**AS AN ELEVENTH CAUSE OF ACTION
UNDER THE FAIR LABOR STANDARDS ACT
OVERTIME**

104. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

105. Defendants wilfully employed Plaintiff in the afore-mentioned enterprise for work weeks longer than 40 hours and failed to compensate Plaintiff for her

employment in excess of 40 hours per week, at a rate of at least one and one-half times the rate at which she was employed.

106. Defendants failed to pay overtime wages to Plaintiff as required by the FLSA, 29 U.S.C. §201 et seq. and its implementing regulations.

107. Defendants' failure to pay Plaintiff overtime pay in accordance with the FLSA, was a direct violation of the FLSA, specifically 29 U.S.C. §207.

108. Defendants' failure to pay proper overtime wages for each hour worked over 40 per week was willful within the meaning of 29 U.S.C. §255.

109. Defendants' failure to comply with the FLSA caused Plaintiff to suffer loss of wages.

### AS A TWELFTH CAUSE OF ACTION
### VIOLATION OF NEW YORK WAGE AND HOUR LAW
### and VIOLATION OF Title 12 NYCRR Section 142-2.2
### OVERTIME RATE

110. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

111. Plaintiff was an employee of Defendants within the meaning of New York Wage Regulations, specifically NYCRR Labor Section 138 *et seq*.

112. Defendants failed to pay Plaintiff a premium for hours worked in excess of 40 hours per week.

113. Defendants violated Plaintiff's rights to overtime pay under Title 12 NYCRR 142-2.2.

114. Defendants also failed to pay Plaintiff a premium/additional amount for hours worked in excess of 10 hours per day.

115. On account of such violations, Defendants are liable to Plaintiff for actual, statutory and liquidated damages.

### AS A THIRTEENTH CAUSE OF ACTION
### VIOLATION OF NEW YORK WAGE ORDER
### EMPLOYEE RECORDS

116. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

117. Defendants failed to keep employee-specific records documenting, *inter alia,* actual hours worked in each week, in violation of New York Labor Law § 661 and 12 NYCRR 142-2.6.

118. Defendants failed to furnish statements with pay and hour information to Plaintiff, in violation of 12 NYCRR 142-2.7.

### JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: New York, New York
       January 14, 2016

        _____
        Zachary Holzberg, Esq.
        DEREK SMITH LAW GROUP, PLLC
        30 Broad Street, 35th Floor
        New York, New York 10004
        Tel.: (212) 587-0760
        *Attorneys for Plaintiff*